**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYSHON GARTLEY, Plaintiff, | ) | |
| vs. | ) | No. 16 C 5687 |
| CITY OF CHICAGO, Chicago Police Officer CLAUZELL GAUSE, and Chicago Police Officer LESHAWN HAWKINS, | ) | Hon. Sara L. Ellis |
| | ) | Mag. Judge Michael T. Mason |
| Defendants. | ) | JURY TRIAL DEMANDED |

**AMENDED COMPLAINT**

Rayshon Gartley, by and through his attorneys, complains of Defendants, City of Chicago, Chicago Police Officer Clauzell Gause and Chicago Police Officer Leshawn Hawkins (collectively, "Defendant Officers") as follows:

**Introduction**

1. This is a civil rights action. On or about June 3, 2014, Rayshon Gartley, a 22-year-old African-American young man, was physically beaten and verbally abused by Chicago Police Officers without lawful justification. Rayshon Gartley presented no threat to the Defendant Officers or to anyone else.

2. The Chicago "police have no regard for the sanctity of life when it comes to people of color."[1]The unconstitutional policies and practices of the Chicago Police Department result in the unjustified injury to people of color, including Rayshon. The City of Chicago is therefore also

1 Police Accountability Task Force. "(Executive Summary) Recommendations for Reform: Restoring Trust Between the Chicago Police and the Communities they Serve," p. 8 (April 2016) [https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf; https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf]

liable for the injuries sustained by Rayshon at the hands of the Defendant Officers.

**Jurisdiction and Venue**

3. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States.

4. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiffs claims also occurred in this judicial district.

**Parties**

5. Plaintiff Rayshon Gartley, at all times relevant to the allegations in this compliant, resided in Chicago, Illinois. He is 5 feet 3 inches tall and weighs 160 pounds.

6. Defendant Clauzell Gause, who is 6 foot 6 inches tall and weighs 235 pounds, was, at all times relevant to the allegations in this complaint, a duly appointed police officer employed by the City of Chicago, acting within the scope of his employment with the City of Chicago and under the color of state law. He is sued in his individual capacity. He is 6-foot-6 and w

7. Defendant Leshawn Hawkins was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Chicago, acting within the scope of his employment with the City of Chicago and under the color of state law. He is sued in his individual capacity.

8. Defendant City of Chicago, a municipality duly incorporated under the laws of the State of Illinois, is the employer and principal of Defendant Clauzell Gause and Defendant Leshawn Hawkins. The City is responsible for the policies, practices and customs of its Police Department, City Council, Independent Police Review Authority, and Police Board.

**Facts**

9. On or about June 3, 2014, Rayshon Gartley was in the psychiatric section of the Jackson Park Hospital. He had been brought to the hospital in handcuffs by the Defendant Officers.

10. While a Jackson Park Hospital nurse was completing a process to involuntarily admit Rayshon, the Defendant Officers without cause or provocation were physically and verbally threatening and taunting him.

11. Soon after this and without warning, the Defendant Officers violently took hold of Rayshon – who was standing at the time, and slammed him to the floor.

12. One of the Defendant officers stepped on Rayshon's head. The Defendant Officers purposely manipulated Rayshon's handcuffed arms in order to inflict excruciating pain, and they used their knees, elbows and fists to batter Rayshon.

13. The Defendant Officers then forced Rayshon to stand up again in front of the Jackson Park Hospital nurse. Rayshon's cries of pain were met with more physical and verbal threats and taunts from the Defendant Officers.

14. Shortly after this, the Defendant Officers again grabbed Rayshon. This time they violently took him out of the room. They took him into a smaller room where (while Defendant Leshawn Hawkins acted as a "look-out") Defendant Gause punched and beat Rayshon.

15. Neither of the Defendant Officers knew that the smaller room was under video surveillance when they inflicted the violence on Rayshon.

16. Defendant Gause's punching and beating of Rayshon and Defendant Hawkins's role as a "look out" were captured on video. Immediately after the incident, the Chicago Police

Department and/or IPRA seized the video[2] of Rayshon's beating. In conformity with its unconstitutional policies, practices and customs related to burying evidence of police-officer-wrongdoing in order to allow pathways for exculpating police officers, the City of Chicago under pressure from the media allowed the release of the video. As of the day of the filing of this complaint, media reports have it that the City of Chicago is to release over a hundred formerly withheld videos of alleged police-officer-misconduct.[3]

17. As a result of the actions of the Defendant Officers, Rayshon suffered great pain and physical injury and trauma to his head, face, wrists, arms, shoulders, legs and torso. He suffered great emotional distress, which exacerbated the condition that brought Rayshon to Jackson Park Hospital in the first place.

18. The actions of the Defendant Officers as alleged in this complaint were taken with the intent to cause or in reckless disregard of the probability that they would cause severe emotional distress to Rayshon.

19. Defendant Clauzell Gause, being present, had the duty and opportunity to intervene to protect Rayshon, but Defendant Clauzell Gause did nothing to assist Rayshon or prevent the physical and verbal violence inflicted on Rayshon.

20. Defendant Leshawn Hawkins, being present, had the duty and opportunity to intervene to protect Rayshon, but Defendant Leshawn Hawkins did nothing to assist Rayshon or prevent the physical and verbal violence inflicted on Rayshon.

---

2 A copy of that video is located at http://www.chicagotribune.com/news/local/breaking/ct-chicago-cop-video-beating-charge-met-20160517-story.html.

3 For example: http://www.chicagotribune.com/news/local/breaking/ct-chicago-police-videos-released-met-20160527-story.html

21. Defendant Clauzell Gause and Defendant Leshawn Hawkins, jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give a false, incomplete, and misleading versions of the events to their superiors and to the public. In order to cover up their misconduct, they falsely claimed that Rayshon placed them in imminent fear of bodily harm.

22. The actions of the Defendants and their named and unnamed co-conspirators, as alleged in this complaint, were done jointly, in concert, and with shared intent and, therefore, constitute a continuing civil conspiracy under 42 U.S.C. § 1983.

**Count I**
**42 U.S.C. § 1983 Claim for Excessive Force**

23. Plaintiff repeats and realleges the previous paragraphs of this complaint, as if they were fully set out in this Count.

24. The actions of Defendant Clauzell Gause and Defendant Leshawn Hawkins described in this complaint violated Rayshon's rights under the United States Constitution to be free from and secure in his person against the use of excessive force and they caused the injuries alleged in this complaint.

25. The actions of Defendant Clauzell Gause and Defendant Leshawn Hawkins as alleged in this Count 1 of the complaint were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiffs injuries.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages, and because Defendant Clauzell Gause and Defendant Leshawn Hawkins acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this

action, attorney's fees and whatever additional relief this Court deems equitable and just.

**Count 2**
**42 U.S.C. § 1983 Monell Policy Claim Against Defendant City of Chicago**

26. Plaintiff repeats and realleges the previous paragraphs of this complaint, as if they were fully set out in this Count.

27. The actions of Defendant Clauzell Gause and Defendant Leshawn Hawkins as alleged in this complaint were done under the authority of one or more interrelated de facto policies, practices and/or customs of the City of Chicago, its police department, Police Board, Independent Police Review Authority (I.P.R.A.), Internal Affairs Division of the Chicago Police Department (I.A.D.), Personnel Division, and/or Superintendents.

28. At all times material to the allegations contained in this complaint, the Defendant City of Chicago and its police department, Superintendents, I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated de facto policies, practices, and customs which included, among other things:

a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force against civilians,

b) the police code of silence;

c) the encouragement of excessive and unreasonable force;

d) the failure to properly investigate acts of excessive and unreasonable force against civilians, particularly young Black men, by Chicago police officers;

e) the failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified acts of excessive force; and/or

f) the failure to properly train and supervise Chicago police officers with regard to inflicting excessive and unreasonable force against civilians, particularly

at young Black men.

29. In December 2015, in the wake of a thirteen month delay in the release of video which contradicts the false, misleading, incomplete account given by the Chicago Police Department of the shooting death of Laquan McDonald, another African American teenager, Mayor of the City of Chicago, Rahm Emanuel ("Mayor Emanuel"), appointed members to The Police Accountability Task Force.

30. On December 9, 2015, Mayor Emanuel speaking on the City of Chicago Council floor[4] said:

> "We need to talk about what to do differently to ensure that incidents like this [the Laquan McDonald Shooting] do not happen again, about the police culture that allows it and enables it ..."
>
> * * *
>
> "They [The Police Accountability Task Force] have to examine decades of past practices that have allowed abusive police officers with records of complaints to escape accountability..."
>
> * * *
>
> "This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues.
>
> No officer should be allowed to behave as if they are above the law just because they are responsible for upholding the law.
>
> Permitting and protecting even the smallest acts of abuse by a tiny fraction of our officers leads to a culture where extreme acts of abuse are more likely, just like what happened to Laquan McDonald."

As a result of these public statements, among others, a City of Chicago motion in limine to bar any evidence of Mayor Rahm Emanuel's comments regarding the existence of a code of silence

4 The full text of Mayor Emanuel's speech can be found at: http://www.illinoisobserver.net/2015/12/09/full-text-emanuel-speech-chicago-police-accountability-mcdonald-shooting/

or attempts to call him to testify at trial has been denied in the case of *Shannon Spauling and Daniel Echeverria v. City of Chicago, et al*., No. 12-cv-8777 (N.D. Ill., May 18, 2016).

31. On April 13, 2016, the Police Accountability Task Force, issued its final report. It contains the conclusion that the Defendant City of Chicago and its law enforcement parastatals have for decades systemically failed in ways that cause extrajudicial death and injury at the hands of the police, random but pervasive physical and verbal abuse by the police, deprivation of basic and human constitutional rights, and lack of individual and systemic accountability.

32. These systematic failures disproportionately affect African American residents of the City of Chicago.

33. The Police Accountability Task Force, reviewing the Chicago Police Department's own data, found that of the 404 police involved shootings between 2008-2015, 74% were African American, as compared with 14% Hispanic, 8% White, and 0.25% Asian. The population of Chicago is almost evenly split among these groups: 32.9% African American, 31.7% White, and 28.9% Hispanic.

34. The Police Accountability Task Force also concluded: “Chicago's police accountability system is broken. The system is supposed to hold police officers accountable to the people they serve and protect by identifying potential misconduct, investigating it and, when appropriate, imposing discipline. But at every step of the way, the police oversight system is riddled with legal and practical barriers to accountability.” (Police Accountability Task Force. “[Executive Summary] Recommendations for Reform: Restoring Trust Between the Chicago Police and the Communities they Serve,” p. 15 (April 2016) [https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf])

35. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians.

36. In *Obrycka v. City of Chicago*, 2012 WL 11047181 (N.D. Ill.), the longstanding and widespread CPD code of silence was again exposed when video tape and cellular phone evidence revealed Chicago police officers trying to cover up and conceal a fellow officer's vicious beating of a female bartender within the City of Chicago. The *Obrycka* jury found that the City had either (1) a widespread custom or practice of failing to investigate and/or discipline its officers; (2) a widespread custom or practice of a police code of silence; or (3) both; and a judgment was entered against the City.

37. The fact that the aforementioned code of silence exists, and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents and former Office of Professional Standards (O.P.S.) and I.P.R.A. Directors, is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, former Mayor Richard M. Daley and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they or their successors have not acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, the fabrication of evidence and false

arrests and prosecutions.

38. In a December 2014 report posted on the City's web site, entitled "Preventing and Disciplining Police Misconduct - An Independent Review and Recommendations Concerning Chicago's Police Disciplinary System," the City acknowledges that in recent years there continue to be both external and internal concerns raised about how complaints of misconduct by police officers were investigated and disciplined.

39. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

40. In 2012, two Chicago Police officers filed a lawsuit for violation of their First Amendment rights and the Illinois Whistleblower Protection Act Statute, alleging an ongoing code of silence so pervasive that they were harassed, threatened, ostracized, and retaliated against by other officers, including supervisors, after they reported illegal conduct of a group of officers. *Shannon Spauling and Daniel Echeverria v. City of Chicago, et al.,*, No. 12-cv-08777 (N.D. Ill.).

41. That the unconstitutional actions of the defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, I.P.R.A., the Detective Division, and the Public Affairs Section. This involvement and ratification is further demonstrated, inter alia, by the public

statements of these policy making officials, and the Department's failure to properly investigate the unconstitutional conduct of the Defendants, or to discipline them for their unconstitutional conduct.

42. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Rayshon Gartley, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their false, incomplete, and misleading reports would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

43. But for the belief that they would be protected, both by fellow officers and by the department, from serious consequences, Defendant Clauzell Gause and Defendant Leshawn Hawkins would not have engaged in the conduct that resulted in the infliction of excessive and unjustified force on Rayshon Gartley.

44. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the acts alleged in this complaint against Rayshon Gartley; they, therefore, are the moving forces behind, and the direct and proximate causes of, the injuries to Rayshon Gartley.

45. Additionally, the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Rayshon Gartley.

46. Among other things, the policies, practices and customs alleged in this complaint encouraged the extrajudicial infliction of excessive and unjustified force against Black men, other police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false, incorrect and misleading statements and reports, and the maintenance of a code of silence. These policies, practices and customs, therefore, are the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendants in this case and the injuries to Rayshon Gartley.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages, plus the costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.

**Count 3**
**State Law Claim for Respondeat Superior Against Defendant City of Chicago**

47. Plaintiff repeats and realleges the previous paragraphs of this complaint, as if they were fully set out in this Count.

48. Defendant Clauzell Gause and Defendant Leshawn Hawkins were, at all times material to the allegations made in this complaint, employees and agents of the Defendant City of Chicago acting within the scope of their employment. Defendant City of Chicago is liable for the acts of Defendants which violated state law under the doctrine of respondeat superior.

WHEREFORE, Plaintiff demands judgment for compensatory damages, jointly and severally from the City of Chicago plus the costs of this action and whatever additional relief this Court deems equitable and just.

**Count 4**
**745 ILCS 10/9-102 Claim Against Defendant City of Chicago**

49. Plaintiff repeats and realleges the previous paragraphs of this complaint, as if they were fully set out in this Count.

50. Defendant City of Chicago was the employer of Defendant Clauzell Gause and Defendant Leshawn Hawkins at all times relevant to the allegations contained in this complaint.

51. Defendant police officers committed the acts alleged in this complaint under the color of law and in the scope of their employment as employees of the City of Chicago, and the City is liable for their actions under 745 ILCS 10/9-102.

WHEREFORE, Plaintiff demands judgment against the Defendant City of Chicago in the amount awarded to Plaintiff against any and all individual Defendants as damages, attorney's fees, costs and interest, and/or for any settlement entered into between the Plaintiff and Defendants, and for whatever additional relief this Court deems equitable and just.

Date: September 23, 2016

Respectfully Submitted,

RAYSHON GARTLEY

By: /s/ Corey B. Rubenstein
One of His Attorneys

Andrew M. Stroth
Action Injury Law Group, LLC
191 N. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 771-2444
astroth@actioninjurylawgroup.com

Joseph J. Duffy
Corey B. Rubenstein
STETLER, DUFFY & ROTERT, LTD.
10 S. LaSalle Street
Suite 2800
Chicago, Illinois 60603
(312) 338-0200
jduffy@sdrlegal.com
cruben@sdrlegal.com

Carlton Odim
Odim Law Offices
225 W. Washington Street, Suite 2200
Chicago, Illinois 60606
(312) 578-9390
carlton@odimlaw.com

*ATTORNEYS FOR PLAINTIFF*

**CERTIFICATE OF SERVICE**

I, Corey B. Rubenstein, an attorney, hereby certify that I caused a true and correct copy of the foregoing **AMENDED COMPLAINT** to be filed via the Court's CM/ECF Online filing system and to be served on all counsel of record on this 23rd day of September, 2016.

/s/ Corey B. Rubenstein